# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

CIVIL ACTION NO. 17-91-DLB-CJS

LORI ARCHEY                                                    **PLAINTIFF**

v.                      **MEMORANDUM OPINION AND ORDER**

AT&T MOBILITY SERVICES LLC, et al.                  **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendants AT&T and Amy Waymire's Joint Motion for Summary Judgment on Plaintiff Lori Archey's claims under the Family & Medical Leave Act (FMLA) (Doc. # 40). In their Motion, Defendants argue Plaintiff has failed to establish a *prima facie* case of FMLA interference or retaliation because she cannot demonstrate that she gave proper notice of her FMLA-related absence. In the alternative, Defendants assert that Plaintiff's claims are time-barred under the FMLA's two-year statute of limitations. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. For the reasons set forth below, Defendants' Motion is **denied**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

AT&T hired Lori Archey as a Retail Sales Consultant ("RSC") on September 9, 2012 to work at its store located in Maysville, Kentucky. (Doc. # 41-2 at 8). As an RSC, Plaintiff's job duties included selling AT&T products and services to new and existing customers and assisting customers with their accounts. (Docs. # 40-2 at 55 and 41-2 at 8). During the relevant time period, Plaintiff's immediate supervisor was Jessica Webb,

who in turn was overseen by Defendant Amy Waymire, the Area Retail Sales Manager. (Docs. # 40-3 at 2 and 40-5 at 1).

During Plaintiff's tenure at AT&T, the company maintained a system of progressive discipline for repeat unauthorized absences and late arrivals ("tardies"). (Doc. # 40-2 at 59). Each unexcused absence or tardy would be assigned a point value. *Id.* Points stayed on an employee's record for six months, after which they expired. *Id.* However, if an employee accrued four points within a six-month period, he or she would be given a "Counseling Notice"; after five points, a "Written Warning"; and after six points, a "Final Written Warning." *Id.* These point totals expired within three months, four months, and six months, respectively. *Id.* After accumulating seven points or more, an employee would be subject to termination. *Id.*

Plaintiff's first unauthorized absence occurred on November 17, 2012. (Doc. # 40-3 at 6). On March 1, 2013, Plaintiff was issued a Counseling Notice for accumulating 4.25 attendance points. *Id.* On August 29, 2013, Plaintiff received a Written Warning for obtaining five points under the attendance policy. *Id.* at 9. By fall 2013, Plaintiff began experiencing anxiety and suffering from migraine headaches. (Doc. # 41-2 at 12). As a result, she began taking leave under the FMLA in October 2013. (Doc. # 41-3 at 1).

Approved FMLA absences were considered excused under AT&T's attendance policy. (Doc. # 40-1 at 4). Plaintiff took her first leave of absence under the FMLA on October 21, 2013. (Doc. # 41-3 at 1). On the following day, Plaintiff's doctor faxed AT&T to say that Plaintiff would be absent until October 23rd due to unforeseen anxiety and migraines. (Doc. # 41-4). This application for leave was approved on November 8, 2013. *See* (Doc. # 41-2 at 20). However, Plaintiff's supervisor, Ms. Webb, noted in Plaintiff's

employment log that Plaintiff had violated the attendance policy by giving notice of her absence 41 minutes after the start of her shift on October 21st. (Doc. # 41-5 at 9). The attendance policy requires employees to report all absences—both excused and unexcused—to their supervisors at least one hour prior to the start of their shift. (Doc. # 40-2 at 58). AT&T later admonished Plaintiff in writing for failure to timely notify management of her absences on October 21st and 22nd. *See* (Doc. # 41-6).

Plaintiff took another leave of absence under the FMLA from December 5th-8th. Plaintiff's physician certified that Plaintiff's absence on these dates was due to her ongoing medical issues (Doc. # 41-7) and AT&T approved this leave shortly thereafter. (Doc. # 41-8). Nevertheless, Ms. Webb later noted in Plaintiff's employee log that "Archey has missed scheduled shifts due to headaches. I asked Lori if she needed to file for a work accommodation due to her recurring health issues." (Doc. # 41-5 at 4). On December 13, 2013, AT&T issued Plaintiff a Final Written Warning for accumulating six points based on a new unexcused absence on October 1, 2013.[1] (Doc. # 40-3 at 12). Plaintiff does not contest any of the unauthorized absences on this Final Written Warning. *See* (Doc. # 41-2 at 41-42).

Plaintiff's health worsened throughout December 2013 and, as a result, her doctor notified AT&T that Plaintiff would require as-needed leave on an intermittent basis for up to three days per week throughout the upcoming year. (Doc. # 41-9). From this point on, Plaintiff began taking FMLA leaves of absence much more frequently. Specifically, from

---

[1] Plaintiff testified that she was absent on this day in order to care for her ailing sister. Her request for FMLA leave on this date was denied because her sister was not an eligible family member under the Act. *See* (Doc. # 41-2 at 18-19).

January 1, 2014 through April 26, 2014, Plaintiff took approximately 37 days off due to her ongoing medical issues. (Doc. # 41-3 at 4-6).

The events occurring after January 1, 2014 are highly contested. Plaintiff asserts that on May 2, 2014, she met with Ms. Webb and Ms. Waymire. (Doc. # 41-2 at 36). During the meeting, Plaintiff claims she was presented with a Counseling Notice, stating that she had 4.25 attendance points on her record stemming from unexcused absences and tardies accrued from June to August 2013. (Docs. # 41-2 at 36-37 and 41-10). Plaintiff also claims to have told Webb and Waymire during this meeting that she was approved for 2-3 days per week of leave under the FMLA. (Doc. # 41-2 at 37). Plaintiff says that Waymire "appeared angry about how much coverage [she] had," *id.* at 40, and then fired her three days later. *Id.*

Plaintiff's termination notice was approved by both Webb and Waymire and states that Plaintiff had accrued 7.5 points, 3.25 more than were on her Counseling Notice from three days earlier. (Doc. # 41-12). The termination notice contained one unexcused absence and one unexcused tardy that were previously included on Plaintiff's December 13th Final Written Warning but which were left off of the May 2nd Counseling Notice. *See* (Docs. # 41-6, 41-10, and 41-12). It also contained two additional tardies accrued on November 14, 2013 and April 18, 2014 as well as an unexcused absence accrued on March 26, 2014. (Doc. # 41-12). Plaintiff argues that the March 26, 2014 "unexcused" absence should have been excused because she properly notified Defendants that she would be taking FMLA leave that day. (Doc. # 41-2 at 36).

Unsurprisingly, Defendants paint a much different picture. While Waymire admits in her deposition to approving the May 2, 2014 Counseling Notice, she denies that any

meeting occurred between her, Webb, and Plaintiff on May 2nd. (Doc. # 40-3 at 3). Rather, Defendants assert that the Counseling Notice was generated, but was never delivered to Plaintiff because Ms. Webb determined that Plaintiff had exceeded the point total permitted by the absence policy and was thus subject to termination. (Doc. # 40-3 at 3). Defendants also contend that Plaintiff was fired on May 2nd rather than on May 5th, although the termination notice is undated and there is no documentation showing when Plaintiff was fired. *See id.* at 4.

The parties agree that Plaintiff's March 26, 2014 absence was the determining factor in Plaintiff's dismissal. *See* (Docs. # 40-1 at 13 and 41 at 11). But for this absence, Plaintiff would not have exceeded the seven-point threshold in AT&T's attendance policy and would not have been subject to termination. *See* (Doc. # 41-12). Therefore, the dispute largely boils down to whether Defendants properly denied Plaintiff's request for FMLA leave on March 26, 2014. The answer to this question depends on whether Plaintiff followed AT&T's "usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.303.

In 2013 and 2014, AT&T had written policies governing FMLA leave. (Doc. # 40-4 at 1). According to Defendants, these policies were available for employees to view on the company's intranet, specifically the "HR One Stop web portal." *Id.* at 2. Defendant describes AT&T's FMLA leave policy as requiring employees to contact the Mobility Centralized Payroll Change Administration (MCPCA) on either the day of the employee's absence or within 48 hours of returning to work after the absence. *Id.* From there, the MCPCA reports an employee's FMLA leave request to a different bureaucratic unit within AT&T, known as "FMLA Operations" and which is located in San Antonio, Texas. (Docs.

# 40-4 at 2 and 41-4).  Once the employee submits her request for leave to the MCPCA, she receives a certification form (known as an "FMLA 4"), which must be signed by her physician and returned to the MCPCA.  (Doc. # 40-4 at 2).  FMLA Operations then sends the employee a form (known as an "FMLA 5"), notifying her of the outcome of the request for leave.  *Id.* at 3.  According to Defendants, all decisions regarding leave are made by the MCPCA and FMLA Operations, and not by AT&T Mobility supervisors, who do not have access to employee medical information or certification documentation.  *Id.* at 2.  In addition, as part of AT&T's separate attendance policy, an employee who is going to miss a scheduled shift must contact her supervisor at least one hour prior to the start of her shift.  (Docs. # 40-2 at 58 and 40-3 at 2).

Plaintiff contends, however, that the policy listed on the "HR One Stop web portal" is not the only policy relating to FMLA leave at AT&T.  Specifically, Plaintiff points to a brochure or handbook AT&T provides to its employees, titled *FMLA: A Look at the Basics*, which appears to mandate a different procedure for how to apply for FMLA leave.  It states in relevant part as follows:

> Step 1: You must provide your supervisor at least 30 days advance notice before FMLA leave is to begin if the leave is foreseeable. However, any unforeseeable leaves require you to notify your supervisor within 2-business days of learning the need for a leave or no later than two business days of your return to work. It is recommended that you provide your supervisor with as much detailed information to allow him/her the ability to submit a complete and accurate [FMLA form] to FMLA Operations. . . .
>
> Step 2: Once the FMLA leave request is made, your supervisor will (1) determine your eligibility, (2) notify you of your eligibility, [and] (3) submit [your FMLA form]. . . .
>
> Step 3: All FMLA4 forms must be completed by the Health Care Provider and submitted to AT&T FMLA Operations. . . .

Step 4: Once the FMLA4 is received and reviewed by FMLA Operations, you will receive a letter notification (FMLA5) via US Mail advising you of the outcome. . . .

(Doc. # 41-13). There are only two similarities between the purported policies. First is the requirement that the employee's healthcare provider send an FMLA 4 form to FMLA Operations; second is that the employee will be notified of the outcome of her request via an FMLA5 form from FMLA Operations. The similarities end there. The first policy requires the employee to send a request for leave directly to the MCPCA, while the second policy instructs employees to notify their supervisor, who will then contact FMLA operations. According to Suzie Villarreal, who was the Associate Director of FMLA Operations in 2014, all AT&T Mobility RSCs would have had access to both policies. (Doc. # 41-14 at 3, 5). Ms. Villarreal also confirmed that neither of the two policy documents state which one governs in the event of a conflict between the two. *id.* at 3.

Plaintiff testified that she followed the second policy each time she requested unforeseeable intermittent FMLA leave. That is, she would call her supervisor, Ms. Webb, to let her know she would be absent, including on March 26th. (Doc. # 41-2 at 10, 35). Plaintiff stated in her deposition that she never contacted the MCPCA to notify AT&T of her intent to use intermittent FMLA leave. *Id.* at 35. Defendants argue just the opposite. In her affidavit, Ms. Villarreal states that Plaintiff called the MCPCA no fewer than seventeen times to request intermittent FMLA leave between October 1, 2013 and April 26, 2014. (Doc. # 40-4 at 5). Similarly, Ms. Webb disclaimed any responsibility for submitting her subordinates' FMLA applications or approving FMLA absences, as is outlined in *FMLA: A Look at the Basics.* (Doc. # 41-16 at 16). Both Ms. Villarreal and Ms. Webb aver in their affidavits that Plaintiff did not call the MCPCA on March 26th to

report her FMLA absence and thus failed to comply with company policy. *See* (Docs. # 40-3 at 3 and 40-4 at 5).

On April 25, 2017—almost three years after she claims she was terminated— Archey filed the instant action against her employer, AT&T, and her indirect supervisor, Amy Waymire in Mason County Circuit Court. (Doc. # 1). The case was properly removed to this Court on May 22, 2017. *Id.* Plaintiff brought claims for FMLA interference under 29 U.S.C. § 2615(a)(1) (Count I), FMLA retaliation under 29 U.S.C. § 2615(a)(2) (Count II), intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), negligence/vicarious liability (Count V), and punitive damages (Count VI). (Doc. # 1-1). On December 26th, 2017, the Court dismissed Counts III, IV, and VI, leaving only Plaintiff's FMLA and negligence claims. (Doc. # 29). Defendants filed their Motion for Summary Judgment on August 10, 2018. (Doc. # 40). Plaintiff filed a Response (Doc. # 41), to which Defendants replied. (Doc. # 42). Thus, the Motion is fully ripe for the Court's review.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Id.* Once a party files a properly-supported motion for summary judgment

by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.

## B. Evidentiary Rulings

Before addressing the merits of Plaintiff's claims, the Court must address three of Defendants' evidentiary objections.

### 1. *Deposition Testimony of Suzy Villarreal*

In their Reply brief (Doc. # 42 at 6), Defendants object to Plaintiff's reliance upon Suzy Villarreal's deposition testimony, which was taken in a separate action involving the same Defendants but a different plaintiff. *See Vonderhaar v. AT&T Mobility Servs.*, No. 2:17-cv-114-WOB-CJS (E.D. Ky. 2017). Ms. Villarreal is employed by Defendant AT&T as an Associate Director of the Corporate Attendance Leave Management Team, formerly known as FMLA Operations. (Doc. # 40-4 at 1). Plaintiff relies on Ms. Villarreal's deposition testimony to establish the viability of the FMLA-leave policy contained in AT&T's brochure *FMLA: A Look at the Basics. See* (Doc. # 41 at 8-9).

In opposing the admissibility of this evidence, Defendants rely solely on a Western District of Kentucky case from 1942 for the proposition that "evidence taken in one case is not competent to be introduced in another case between different parties." (Doc. # 42 at 6) (quoting *S.W. Anderson Co. v. Glenn*, 43 F. Supp. 334, 338 (W.D. Ky. 1942)). *Glenn* is hardly persuasive, as it was decided decades prior to the adoption of the Federal Rules of Evidence and applied Kentucky evidentiary rules. *See* 43 F. Supp. at 338.

Contrary to Defendants' argument, the Court identifies two bases upon which Ms. Villarreal's deposition testimony may be considered in deciding Defendants' Motion. First,

Rule 32(a)(8) of the Federal Rules of Civil Procedure permits the use of deposition testimony taken in an earlier action "as allowed by the Federal Rules of Evidence." As Ms. Villarreal is an employee of AT&T, her "deposition testimony from a previous case [is] admissible non-hearsay because it is an admission by a party-opponent." *United States v. Lay*, 612 F.3d 440, 448 (6th Cir. 2010) (citing Fed. R. Evid. 801(d)(2)). Second, "[a] deposition taken in a different case may be admitted as a sworn statement or affidavit" pursuant to Federal Rule of Civil Procedure 56(c)(4). *Woodby v. Bradley Cty.*, No. 1:07-cv-3, 2008 WL 5245361, at *4 (E.D. Tenn. Dec. 16, 2008). Therefore, the filing of Ms. Villarreal's deposition with Plaintiff's Response (Docs. # 41 and 41-14) makes it part of the record in this case for purposes of Federal Rule of Civil Procedure 56.

### 2.    *Affidavit of Jon Campbell*

Defendants also seek to exclude the affidavit of Jon Campbell, who was Archey's union representative at AT&T. *See* (Doc. # 42 at 3). In his affidavit, Campbell criticizes Defendant Amy Waymire, alleging generally that Ms. Waymire fails to timely respond to his grievance requests. (Doc. # 41-1 at 1). He also recounts an episode involving a union employee by the name of Adam Ray, who Ms. Waymire allegedly terminated "for not getting his short term disability case approved." *Id.* With regard to Archey, Campbell avers that

> "[t]here have been multiple instances where my members have been retaliated against for being sick. Lori Archey was terminated on points even though they were approved FMLA time. . . . I believe [Archey's case] to be retaliation for exercising [her] right to take . . . FMLA, based on previous instances I have seen in the past."

*Id.* at 1-2.

"Federal Rule of Civil Procedure 56(c)(4) requires supporting affidavits to be based on personal knowledge, meaning personal observations or experiences." *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 499 (6th Cir. 2017). For an affidavit to be admissible, the affiant must "expressly provide the basis for each assertion in [his] affidavit." *Id.* While Campbell refers generally to "instances I've seen in the past," and discusses his personal experience regarding an employee who was denied short-term disability, he fails to explain how he knows any facts *as they pertain to Archey's case*. Therefore, the Court will **not** consider Campbell's affidavit.

### 3.    Events Occurring Before April 25, 2014

Finally, Defendants make two related arguments regarding the exclusion of events occurring before April 25, 2014, three years prior to the filing of Plaintiff's Complaint. The FMLA's statute of limitations is ordinarily two years, but is extended to three years if the Plaintiff can demonstrate a "willful violation." 29 U.S.C. § 2617(c). Defendants first contend that Plaintiff cannot demonstrate willfulness through actions that occurred more than three years prior to the filing of the Complaint. (Doc. # 42 at 2). Similarly, Defendants also assert that—assuming the three-year statute of limitations governs—Plaintiff cannot rely on disciplinary actions that took place more than three years prior to the filing of the Complaint to establish liability under the FMLA. *Id.* at 7.

The Court is unable to locate any case law supporting Defendants' first argument. Nevertheless, it is logical that a plaintiff should not be able to look back more than three years to find evidence supporting the application of a three-year statute of limitations. Thus, out of an abundance of caution, the Court will not consider events occurring before April 25, 2014 to determine the applicable statute of limitations.

Regarding Defendants' second argument, the Court agrees that in some instances, a lawsuit based on an event occurring outside of the statute of limitations period is time-barred. *See Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 388-89 (6th Cir. 2006). Where, for example, an employer improperly denies a request for FMLA leave and assesses an attendance "point" for an FMLA-covered absence, a lawsuit filed more than three years later *based solely on that improper denial* will be time-barred. *See Butler v. Owens-Brockway Plastic Prods., Inc.*, 199 F.3d 314, 317 (6th Cir. 1999). In contrast, where, as here, the lawsuit is based on an employee's termination that occurred *within* the statute of limitations, and that termination is based on FMLA-protected absences taken *outside* the statute of limitations, the FMLA claim is timely. *See id.* Therefore, in deciding Plaintiff's claims on the merits, the Court may properly consider the alleged wrongful denial of Archey's FMLA leave on March 26, 2014 because it directly led to her termination on May 5, 2014. However, the Court will not consider other events that occurred prior to April 25, 2014 in determining whether there is a triable issue of fact as to FMLA liability.

## C.    FMLA Claims

Under the FMLA, an employee who suffers from "a serious health condition that makes [her] unable to perform the functions of the position" may take up to twelve weeks of leave per year. 29 U.S.C. § 2612(a)(1)(D). A qualified employee may take her twelve weeks of leave in one of three ways: [1] in a single block, [2] as intermittent leave taken in separate periods due to a single illness or injury, or [3] through a reduced work schedule," which allows the employee to work on a part-time basis. *See Banks v. Bosch Rexroth Corp.*, F. App'x 519, 523 (6th Cir. 2015). The FMLA prohibits employers from

"interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided [by the Act]." 29 U.S.C. § 2615(a)(1). It is also unlawful for employers to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *Id.* § 2615(a)(2). Employees who prevail under either of these provisions may seek damages or equitable relief. *Id.* § 2617(a)(1).

The Sixth Circuit recognizes two discrete theories of relief under the FMLA. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). The interference theory, based on § 2615(a)(1), permits recovery for any interference with an FMLA-created right "regardless of the intent of the employer." *Id.* In contrast, the retaliation theory, grounded in § 2615(a)(2), requires that a plaintiff demonstrate malintent on the part of the employer. *Id.* Specifically, "the central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Id.* (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)).

In this case, Archey has asserted both an interference and a retaliation claim under the FMLA. As is often the case, Plaintiff supports her FMLA claims with circumstantial evidence. In such circumstances, the Court applies the well-recognized burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Donald v. Sybra*, 667 F.3d 757, 762 (6th Cir. 2012). Under *McDonnell Douglas*, the employee must demonstrate a *prima facie* case of interference and retaliation. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action—in this case

termination. *Id.* If the employer makes such a showing, the burden shifts back to the employee to show that the employer's purported justification is pretextual. *Id.* at 804.

The Court first addresses the merits of Plaintiff's FMLA claims, after which it will determine if Plaintiff's claims are time-barred. *See Rodriguez v. Ford Motor Co.*, 382 F. Supp. 2d 928, 936 (E.D. Mich. 2005).

### 1. *FMLA Interference*

#### a. *Prima Facie* **Case**

To make out a *prima facie* case of FMLA interference, a plaintiff must establish five elements: (1) the plaintiff was an eligible employee; (2) the defendant is a covered employer; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave the employer notice of her intention to take leave; and (5) the defendant denied the plaintiff's FMLA benefits to which she was entitled. *Sybra*, 667 F.3d at 761.

The first three elements of Plaintiff's *prima facie* case are not in dispute. Defendants contend, however, that Plaintiff is unable to establish the fourth element because she did not give AT&T proper notice of her intent to take leave on March 26, 2014. (Doc. # 40-1 at 11-13). In determining whether an employee provided her employer with adequate notice, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005) (internal quotation marks omitted). When, as here, the need for leave was unforeseeable, Plaintiff must provide notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the

time prescribed by the employer's *usual and customary* notice requirements applicable to such leave." *Id.* (emphasis added). "If it is not clear from the record whether the employee gave such notice, then there exists a factual dispute sufficient to preclude summary judgment on the interference claim." *Parks v. UPS Supply Chain Sols., Inc.*, No. 11-404-DLB-CJS, 2014 WL 414230, at *9 (E.D. Ky. Feb. 4, 2014) (citing *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 248 (6th Cir. 2004)).

Defendants argue that on March 26, 2014, Plaintiff failed to follow AT&T's "usual and customary" notice requirements listed in the "HR One Stop web portal." (Doc. # 40-1 at 12). Defendants maintain that "[t]here is no dispute that Defendant AT&T's notice requirement for intermittent FMLA leave obligates the employee to call the Mobility Centralized Payroll Change Administration (MCPCA) group, <u>not</u> the Defendant AT&T or an employee of AT&T . . . ." *Id.* (emphasis in original).

This argument ignores Plaintiff's testimony that she followed a contrary policy contained in *FMLA: A Look at the Basics*, which tells employees to contact their supervisor to report an FMLA-related absence. *See* (Doc. # 41-2 at 10, 35). An employer cannot obtain summary judgment on the basis that its employee failed to adhere to its internal FMLA policy when there is evidence that in reality the employer lacked a uniform policy. *See Casagrande v. OhioHealth Corp.*, 666 F. App'x 491, 497 (6th Cir. 2016). Defendants do not disavow the policy in *FMLA: A Look at the Basics*. In fact, Ms. Villarreal testified that employees such as Ms. Archey would have had access to both policies. (Doc. # 41-14 at 3, 5). Instead, Defendants rely exclusively on Ms. Villarreal's statements in her affidavit to argue that the policy in AT&T's intranet portal was the "usual and customary" one. *See* (Doc. # 40-1 at 12). Ms. Villarreal also avers that Plaintiff called

the MCPCA each and every time she requested intermittent leave starting November 1, 2013. (Doc. # 40-4 at 5). However, as Defendants do not provide any documentary evidence to back up their contentions, they cannot disprove Plaintiff's testimony that she called her supervisor—and not the MCPCA—every time she requested a day off under the FMLA. *See* (Doc. # 41-2 at 35). Because there is no evidence apart from the parties' conflicting sworn statements, there is a genuine issue of material fact regarding which FMLA policy was "usual and customary" at the time Ms. Archey gave notice of her FMLA leave. As such, Plaintiff's testimony that she complied with the policy set out in *FMLA: a Look at the Basics* is evidence that she gave reasonable notice of her intent to take leave on March 26th and thus she has met the fourth element of her *prima facie* case of FMLA interference.

Defendants also argue that Plaintiff cannot establish the fifth element because they did not deny her FMLA benefits to which she was entitled. *See* (Doc. # 40-1 at 13). Defendants claim that they never disapproved Plaintiff's request for leave when she sought leave properly through the MCPCA, and only counted her absence as unexcused when she failed to notify the MCPCA on March 26th. *Id.* This argument fails. The Court has already found a dispute of material fact as to whether Plaintiff ever contacted—or was required to contact—the MCPCA in order to obtain FMLA leave. Viewing the facts in the light most favorable to Archey, there is evidence that she properly notified her supervisor Ms. Webb on March 26th in compliance with AT&T's FMLA policy. As it is undisputed that Defendants terminated Plaintiff in part because of her unexcused

absence on March 26th, Plaintiff has met her burden with regard to the fifth element. Thus, the Court finds that Plaintiff has made a *prima facie* showing of FMLA interference.[2]

### b.    Legitimate, Nondiscriminatory Reason

The Court having found that Archey established a *prima facie* case of FMLA interference, the burden now shifts to Defendants to articulate "a legitimate, non-discriminatory reason for [their] actions."  *Demyanovich v. Cadon Plating & Coatings, LLC.*, 747 F.3d 419, 427 (6th Cir. 2014).  "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."  *Id.* at 431 (quoting *Edgar*, 443 F.3d at 508).  Defendants' proffered reason for terminating Archey is that she violated AT&T's attendance policy by accruing an unexcused absence on March 26, 2014.  *See* (Doc. # 40-1 at 14).  Excessive absenteeism is a permissible basis for terminating an employee.  *See Wallace v. FedEx Corp.*, 764 F.3d 571, 590 (6th Cir. 2014).

Nevertheless, in this case, Plaintiff's alleged violation of AT&T's attendance policy was not "*unrelated* to the exercise of [her] FMLA rights."  *Demyanovich*, 747 F.3d at 431 (emphasis added).  In *Wallace v. FedEx Corp.*, the Sixth Circuit held that an employer

---

[2]    Plaintiff also argues that Defendants interfered with her FMLA rights by creating "a web of conflicting policies on how to notify the company regarding FMLA leave."  (Doc. # 41 at 15).  According to Plaintiff, these conflicting policies "chilled Plaintiff's use of FMLA."  *Id.*  The Sixth Circuit has held that discouraging an employee from exercising her FMLA rights may constitute an actionable FMLA-interference claim, but only when the employee can show that she's been prejudiced by the violation  *See Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 454-55 (6th Cir. 2005).  Accordingly, "[t]hat an employer's conduct might 'chill' use of FMLA leave is not enough unless plaintiff 'offer[s] evidence that it, in fact, caused her or any other employee to refrain from requesting or using FMLA leave.'"  *Bonfiglio v. Toledo Hosp.*, No. 3:16-cv-2163, 2018 WL 5761220, at *12 (N.D. Ohio Nov. 1, 2018) (quoting *Santoli v. Vill. of Walton Hills*, No. 1:12-cv-1022, 2015 WL 1011384, at *5 (N.D. Ohio Mar. 3, 2015)).  Indeed, in *Harcourt v. Cincinnati Bell Tel. Co.*—cited by Plaintiff—the court found a viable FMLA-interference claim where "[t]here was substantial evidence that [the employer's] policies *actually discouraged Plaintiffs from utilizing their FMLA entitlements*."  383 F. Supp. 2d 944, 962 (S.D. Ohio 2005) (emphasis added).  Here, by contrast, Plaintiff points to no evidence showing that she was deterred from pursuing FMLA leave as a result of AT&T's conflicting policies.  In fact, she continued to apply for and utilize FMLA leave up until she was terminated.  Therefore, the Court rejects this aspect of Plaintiff's FMLA-interference claim.

cannot rely on excessive absenteeism as cause for termination when the absences relate directly to the employer's alleged FMLA violation. 764 F.3d at 590. The plaintiff in *Wallace* argued that she was terminated for accruing two unexcused absences, which she claimed had resulted from her employer's violation of FMLA notice regulations. *Id.* The Sixth Circuit rejected the employer's argument that its employee's violation of company attendance policy was independent from the employee's use of FMLA leave. *Id.* The court found that "when the absences and cause for discharge relate directly to the FMLA leave and the company's failure to give notice . . . there is no legitimate and independent reason for dismissal." *Id.* In other words, the employer's purported legitimate reason—violation of the attendance policy—was "intimately intertwined" with the employee's FMLA leave. *Id.*

Here, similar to *Wallace*, Archey's unexcused absence on March 26th "is a direct result of failing to perfect her FMLA leave." *Id.* Therefore, "to the extent [AT&T] claims it terminated [Archey] based, in part, on [her March 26th] absence[], which may have been FMLA-qualifying, that reason is 'intimately intertwined' with [Archey's] potentially FMLA-qualifying leave." *West v. Pella Corp.*, 2018 WL 345115, at *8 (W.D. Ky. Jan. 9, 2018) (quoting *Wallace*, 764 F.3d at 590); *see also Ezell v. Renal Care Grp., Inc.*, No. 5:17-cv-002-TBR-LLK, 2018 WL 2054562, at *8-9 (W.D. Ky. May 2, 2018). As such, Defendants have not demonstrated the requisite "independent, legitimate" reason for Archey's termination. *Wallace*, 764 F.3d at 590.

### c.    Pretext

Even assuming Defendants' proffered reason satisfies their burden of production under *McDonnell Douglas*, Plaintiff has put forth sufficient evidence to show Defendants'

reason was pretextual. To prove pretext, a plaintiff must demonstrate that the employer's reason: (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was not sufficient to justify the decision. *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 379 (6th Cir. 2017). At bottom, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Parkhurst v. Am. Healthways Servs., LLC*, 700 F. App'x 445, 449 (6th Cir. 2017) (alteration in original) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). The Court finds that a reasonable jury could answer this question in the affirmative.

To start, there is evidence indicating that Defendants' proffered reason had no basis in fact. As discussed at length above, a reasonable jury could find that Plaintiff properly notified AT&T regarding her absence on March 26th and thus would not have accumulated seven points in violation of AT&T's attendance policy. Therefore, Plaintiff has shown that Defendants "did not actually have cause to take adverse action against [her] based on its proffered reason." *Seeger*, 681 F.3d at 285 (quoting *Joostberns v. UPS*, 166 F. App'x 783, 791 (6th Cir. 2006)).

Defendants argue that even "assuming *arguendo* that Plaintiff timely and appropriately reported her March 26, 2014 absence . . . Defendants operated under the honest belief that Plaintiff had violated the attendance policy." (Doc. # 40-1 at 15). The "honest-belief rule" entitles an employer to summary judgment when it "held an honest belief in its proffered reason," even in cases where its proffered reason "is ultimately found to be mistaken, foolish, trivial, or baseless." *Seeger*, 681 F.3d at 285-86 (internal quotation marks omitted). The theory behind the rule is that "If the employer honestly, albeit mistakenly, believes in the non-discriminatory reason it relied upon in making its

employment decision, then the employer arguably lacks the necessary discriminatory intent." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

Consequently, the scope of the rule is not limitless. For example, it does not apply in cases where the error on the part of the employer is "too obvious to be unintentional." *Seeger*, 681 F.3d at 286 (quoting *Smith*, 155 F.3d at 807). Similarly, an employer cannot invoke the rule when its "decision-making process is 'unworthy of credence.'" *Murphy v. Ohio State Univ.*, 549 F. App'x 315, 322 (6th Cir. 2013) (quoting *Smith*, 155 F.3d at 807). The burden is on the defendant to "point to specific facts that it had at the time the decision was made which would justify its belief in the proffered reason." *Clay v. UPS*, 501 F.3d 696, 714 (6th Cir. 2007).

In support of their argument that they had an honest belief, Defendants point to Ms. Webb's affidavit, which states that she verified with the MCPCA on April 28, 2014 that Archey had not reported her March 26, 2014 absence. (Doc. # 40-1 at 15). Thus, according to Defendants, Webb had an honest belief that Archey had eclipsed the seven-point threshold in the attendance policy prior to approving her termination on May 5th.

Yet, evidence in the record casts doubt on the credibility of Defendants' story. If Ms. Webb knew on April 28th that Plaintiff had accrued an unexcused absence on March 26th, it is unclear why that unexcused absence was omitted from the Counseling Notice she approved and gave to Archey just four days later on May 2nd. Accordingly, a reasonable jury could infer that Ms. Webb and Ms. Waymire improperly classified Plaintiff's absence as "unexcused" after Archey alerted them on May 2nd of her entitlement to three days per week of FMLA leave.

This inference is supported by several additional facts in the record: first, Plaintiff testified that on May 2nd, Ms. Waymire "appeared angry about how much coverage [she] had." (Doc. # 41-2 at 156). Second, Plaintiff's May 2nd Counseling Notice listed 4.25 attendance points on her record, whereas three days later, her termination notice listed 7.5 points. *See* (Docs. # 41-10 and 41-12). Thus, within three days, Defendants added 3.25 points to Plaintiff's attendance record, all of which stemmed from absences and tardies *predating* the May 2nd Counseling Notice. *See* (Doc. # 41-12). Third, Plaintiff testified that whenever she accrued a point on her attendance record, she would see an email or notification upon logging into her account at work. *See* (Doc. # 41-2 at 35). Plaintiff maintains that she never saw a notification of an unexcused absence on March 26th. *Id.* at 35, 36, 39. Based on these facts, a jury could conclude that Defendants reclassified previous tardies and absences from "excused" to "unexcused" after learning of Plaintiff's approval for increased FMLA leave. As Plaintiff has "produce[d] sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants did not honestly believe in the proffered non-discriminatory reason for its adverse employment action," summary judgment is inappropriate. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (internal quotation marks, brackets, and ellipsis omitted).

In their Reply, Defendants attempt to counter Plaintiff's pretext argument by merely contesting the facts surrounding Plaintiff's termination. Specifically, Defendants repeatedly challenge Plaintiff's testimony that (1) she met with Ms. Webb and Ms. Waymire on May 2nd; (2) she was issued the Counseling Notice during the meeting on May 2nd; and (3) that she was fired on May 5th. *See* (Doc. # 42 at 8-9). Defendants

urge the Court to believe instead that (1) Plaintiff's purported meeting on May 2nd never occurred; (2) the May 2nd Counseling Notice was retracted; and (3) Plaintiff was fired on May 2nd, not May 5th. *Id.* However, Plaintiff testified to her version of the facts multiple times, and Defendants' own testimonial evidence to the contrary does not negate Plaintiff's testimony. "In considering a motion for summary judgment, '[t]he judge's function . . . is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact.'" *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 592 (6th Cir. 2009) (alteration in original) (quoting *Bultema v. United* States, 359 F.3d 379, 382 (6th Cir. 2004)). Thus, the Court declines Defendants' invitation to resolve factual disputes in their favor.

For the foregoing reasons, the Court finds there to be triable issues of fact regarding Plaintiff's FMLA Interference claim.

### 2. *FMLA Retaliation*

#### a. *Prima Facie* Case

In order to establish a *prima facie* case of FMLA retaliation, a plaintiff must establish four elements: (1) plaintiff was engaged in a statutorily-protected activity; (2) defendant knew that plaintiff was exercising her FMLA rights; (3) plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger,* 681 F.3d at 283. "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

The second element is uncontested. Defendants were aware that Plaintiff had taken FMLA leave starting in November 2013. The third element is likewise uncontested,

as Plaintiff suffered an adverse employment action when she was terminated in May 2014. *See Johnson v. Fifth Third Bank*, 685 F. App'x 379, 385 (6th Cir. 2017). Surprisingly, Defendants make no argument regarding a causal connection between Plaintiff's FMLA leave and her termination. Nevertheless, the Court is satisfied that Plaintiff has made the necessary showing of a causal connection. Under Sixth Circuit law, a plaintiff can show causality "where an adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey*, 516 F.3d at 525. Archey testified that she was fired on May 5, 2014, three days after telling Ms. Waymire that she was eligible for up to three days per week in FMLA leave. Plaintiff had also taken extensive leave in the four months prior to her termination. Therefore, a reasonable jury could find a causal connection between Plaintiff's FMLA leave and her termination.

Defendants challenge only the first element of Plaintiff's *prima facie* case, asserting that Plaintiff was not terminated for engaging in statutorily-protected activity because Archey's March 26th absence was unexcused and thus not considered FMLA time. *See* (Doc. # 40-1 at 17). In Defendants' words, "taking unapproved leave is not a protected right under the FMLA." *Id.* (emphasis in original). However, Defendants' argument is circular because, as stated above, Archey has made out a *prima facie* case that Defendants' categorization of the March 26th absence as unexcused interfered with her statutory right. *See Haley v. Cmty. Mercy Health Partners*, No. 3:11-cv-232, 2013 WL 322493, at *16 (S.D. Ohio Jan. 28, 2013). A reasonable jury could infer that Defendants' absence on March 26th was FMLA-protected because there are facts in the record establishing that Plaintiff gave proper notice under AT&T policy. *See supra* at II.C.1.a.

Plaintiff has thus satisfied "the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." *Seeger*, 681 F.3d at 283.

### b.    Legitimate Reason and Pretext

Defendants rely on the same legitimate, nondiscriminatory justification that they relied on for Archey's FMLA-interference claim. *See* (Doc. # 41-1 at 17 n.2). For the same reasons as outlined above, the Court finds that justification to be insufficient. Therefore, a question of fact remains regarding whether Defendants retaliated against Plaintiff for exercising her FMLA rights.

### 3.    *Statute of Limitations*

The Court next addresses Defendants' alternative argument that Plaintiff's FMLA claims are time-barred. The statute of limitations for most FMLA claims is two years. *See* 29 U.S.C. § 2617(c)(1). However, the plaintiff gets the benefit of a three-year statute of limitations if she can show that the defendant committed a willful violation of the FMLA. *Id.* § 2617(c)(2). The Sixth Circuit has held that for purposes of the FMLA, the limitations period begins to run at the moment the plaintiff is terminated, not when the employer first interferes with the plaintiff's FMLA rights. *See Butler* 199 F.3d at 317. Here, Plaintiff filed her lawsuit in state court on April 25, 2017, more than two years but less than three years after she was terminated in May 2014. Therefore, for her claim to survive summary judgment, she must demonstrate that Defendants acted willfully.

"An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). "[T]he determination of willfulness involves a factual question," *id.*, and the plaintiff bears the burden at trial of

proving a willful violation. *Hoffman v. Prof'l Med. Team*, 394 F.3d 414, 415 (6th Cir. 2005). In the Court's view, a jury could find that Archey has met her burden regarding willfulness.

Summary judgment is rarely appropriate on statute-of-limitations grounds where, as is the case here, there remains a dispute of fact regarding whether the employee gave proper notice of her FMLA leave. *See, e.g.*, *Williams v. Schuller Int'l, Inc.*, 29 F. App'x 306, 309 (6th Cir. 2002); *Ezell*, 2018 WL 2054562, at *5; *Rodriguez*, 382 F. Supp. 2d at 936-37. For example, in *Williams*, the Sixth Circuit reversed the district court's grant of summary judgment for the defendant on statute-of-limitations grounds, concluding that there were disputed facts "involv[ing] the adequacy and timing of the [FMLA] notice allegedly given by [plaintiff]." 29 F. App'x at 309. The court held that "[i]f it should ultimately be found that the plaintiff gave her employer timely notice of a claim for leave under the statute, we believe that there would be genuine issues as to . . . whether the employer made reasonable efforts to evaluate the claim before deciding to fire the plaintiff." *Id.* If the jury were to agree with the plaintiff on this issue as well, it could also "find that the employer acted in knowing or reckless disregard of its statutory obligations." *Id.*

Similar to the Plaintiff in *Williams*, there remains a genuine dispute over whether Archey provided adequate notice of her request for leave on March 26, 2014. If a jury ultimately determines that she did, it could also find that AT&T was "put on notice of Plaintiff's need for [FMLA] leave" on March 26th. *Rodriguez*, 382 F. Supp. 2d at 937. Accordingly, a jury could then conclude that AT&T acted recklessly or knowingly when it terminated Plaintiff based in part upon her March 26th absence.

Furthermore, if the jury were to find Plaintiff's testimony to be credible, it could reasonably conclude that Ms. Waymire terminated Plaintiff based at least in part on Plaintiff's statement on May 2nd that she was entitled to additional FMLA leave. This evidence creates a genuine dispute of material fact as to whether the alleged interference and/or retaliation was a willful violation of the FMLA. *See Gannon v. Cannon Cty.*, No. 3:10-cv-847, 2011 WL 6888540, at *10 (M.D. Tenn. Dec. 29, 2011). For the foregoing reasons, Defendants' Motion for Summary Judgment on Plaintiff's FMLA claims on statute of limitations grounds is **denied**.

### D. Amy Waymire's Individual Liability Under the FMLA

Defendants argue separately that Amy Waymire cannot be held individually liable on Plaintiff's FMLA claims. The Sixth Circuit's decision in *Mitchell v. Chapman*, 343 F.3d 811, 831 n.22 (6th Cir. 2003) "has been read by district courts in the Sixth Circuit as implicitly holding that individual liability exists" under the FMLA. *Mueller v. J.P. Morgan Chase & Co.*, No. 1:05-cv-560, 2007 WL 915160, at *22 (N.D. Ohio Mar. 23, 2007). For many of the reasons set forth above, including Ms. Waymire's presence at the meeting with Plaintiff on May 2nd and her approval of Plaintiff's Counseling Notice and subsequent termination, a reasonable jury could find Waymire to have committed FMLA interference or retaliation. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's FMLA claims as they pertain to Amy Waymire is **denied**.

### E. Negligence and Vicarious Liability

Finally, Plaintiff alleges that Defendant Waymire was negligent and that, as a result, AT&T is vicariously liable. (Doc. # 1-1 at 7). Defendants' sole argument for why Plaintiff's negligence claim should fail comes in a self-serving and unsupported footnote,

which states that "Defendant Waymire did not commit any action, whether intentional or unintentional, as to any of Plaintiff's claims.[3] (Doc. # 40-1 at 18 n.3).  Given the evidence of Ms. Waymire's knowledge of Plaintiff's entitlement to FMLA leave and her involvement in Plaintiff's termination, the Court finds this statement to be unfounded.  Moreover, in making only this brief, vague statement, Defendants "have failed to meet [their] burden on summary judgment to 'point out' [a] specific deficiency of Plaintiff's case."  *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 506 (6th Cir. 2006).  Defendants' Motion for Summary Judgment on Plaintiff's negligence claim is therefore **denied**.

## III.  CONCLUSION

For the reasons stated above, **IT IS ORDERED** as follows:

(1)     Defendants' Motion for Summary Judgment (Doc. # 40) is **DENIED**; and

(2)     Within **twenty (20) days** from the date of entry of this Memorandum Opinion and Order, the parties **shall file a Joint Status Report**, setting forth available dates for a Final Pretrial Conference and Jury Trial, and whether they would be amenable to a court-facilitated settlement Conference on the remaining claims.

This 29th day of March, 2019.



Signed By:
*David L. Bunning*
United States District Judge

J:\DATA\Opinions\Covington\2017\17-91 MOO Denying MSJ.docx

---

[3]     Plaintiff's citation to *Ingram v. Oasis Invs., LLC*, No. 5:16-cv-206-TBR, 2017 WL 6508362 (W.D. Ky. Dec. 19, 2017) is misplaced, as that case discusses negligent hiring, a theory distinct from vicarious liability.